IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LAWRENCE HICKMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. ACT. NO. 2:15cv782-ECM |
| ) | (WO) |
| AMERICAN SPECIALTY ) | |
| ALLOYS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Lawrence Hickman ("Hickman") filed this action on October 23, 2015, alleging claims of breach of contract, unjust enrichment, fraud and conversion against American Specialty Alloys, Inc, Revolution Aluminum, LLC, a/k/a/ ASA Metals, LLC[1], and Roger D. Boggs (hereinafter collectively "Defendants"). According to Hickman, he worked for and invested in Boggs' non-existent aluminum plant. Hickman asserts he is owed $335,705.04, which constitutes the unpaid loan to build the plant as well as unpaid wages, severance pay, and tax reimbursement. Hickman also seeks pre- and post-judgment interest, attorney's fees and punitive damages against the Defendants. (Doc. 28).

---

[1] The Plaintiff asserts that Revolution Aluminum, LLC is a successor in interest to American Specialty Alloys, Inc. and refers to them collectively as "ASA" in the Complaint. For the purposes of this Order, the Court will do the same.

Now pending before the Court is Hickman's Second Motion for Default Judgment (doc. 32) against the Defendants.[2] The Defendants have filed a response to the Plaintiff's motion. (Doc. 43). On November 16, 2018, the Court heard oral argument on the Motion for Default Judgment. After careful consideration, the Court concludes that motion for default judgment is due to be GRANTED in part and DENIED in part.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Personal jurisdiction and venue are uncontested.

## II.  STANDARD OF REVIEW

Federal Rules of Civil Procedure 55 governs the procedure for obtaining a default judgment. An entry of default must precede an entry of a default judgment. *See* FED.R.CIV.P. 55. When a defendant "has failed to plead or otherwise defend," and the plaintiff demonstrates that failure, the clerk must enter the defendant's default. FED.R.CIV.P. 55(a). After entry of default, the plaintiff "must apply to the court for a default judgment." FED.R.CIV.P. 55(b)(2). The court may but is not required to hold a hearing before entering a default judgment. "Given its permissive language, Rule 55(b)(2) does not require a damages hearing in every case." *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

---

[2] Also pending before the Court are the Plaintiff's motions for telephone status conference (docs. 57, 59, & 60) which are due to be denied as moot.

"When a defendant defaults, he "admits the plaintiff's well-pleaded allegations of fact." *Id.*, (quoting *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1106 (11th Cir. 2015) (quotation marks omitted)).

## III.  PROCEDURAL HISTORY

Some procedural history of this case is critical to the resolution of the Plaintiff's motion for default judgment.  The original complaint was filed on October 23, 2015, alleging claims of breach of contract, unjust enrichment, fraud, and conversion.  Defendant Revolution Aluminum, LLC, was served on March 10, 2016, and entry of default was entered against it on April 4, 2016.  (Doc. 10).  Counsel for all three defendants accepted waivers of service on May 27, 2016.  (Docs. 13, 14 & 15).  No answers or responsive pleadings were filed on behalf of the Defendants.

On October 7, 2016, the Plaintiff filed a status report indicating that the parties had been engaged in settlement negotiations since the date of service, but that negotiations had broken down.  (Doc. 17).  On November 22, 2016, Hickman filed an application for default against American Specialty Alloys and Roger Boggs, and on November 28, 2016, the Clerk entered default as to the remaining two defendants. (Doc. 20).

On March 8, 2017, the Plaintiff filed a Motion for Default Judgment as to all Defendants (doc. 21), and on March 9, 2017, the Court ordered the Defendants to show cause why the Motion should not be granted.  (Doc. 24).  The Defendants filed nothing in response to the Motion for Default Judgment.

On May 8, 2017, the Plaintiff filed an amended complaint and served the amended complaint on the attorney who accepted service on behalf of the Defendants previously.

3

(Doc. 28).  The Defendants filed no answers or responsive pleadings in response to the amended complaint.

On August 3, 2017, the Plaintiff again applied for entry of default against the defendants (docs. 29 & 30) which the Clerk entered on August 4, 2017 (doc. 31).  On August 8, 2017, the Plaintiff filed a second motion for default judgment (doc. 32).[3]  On December 4, 2017, the Court ordered the Defendants to show cause why the second motion for default judgment should not be granted.  (Doc. 35).

On December 14, 2017, Attorney Clinton A. Richardson ("Richardson") filed a notice of appearance on behalf of all three defendants.  (Doc. 36).  On December 22, 2017, the Defendants filed a response to the motion for default judgment in which they allege prior counsel failed to properly respond to the amended complaint.  (Doc. 43).  In addition, the Defendants specifically requested "that this Court not enter default judgment, and permit Defendants an extension of forty-five (45) days to secure adequate capital to resolve this matter with the Plaintiff or otherwise initiate an active defense of Plaintiff's claims for relief."  (Doc. 43 at 4).  The Plaintiff opposed granting the Defendants' additional time to respond. (Doc. 44).  The Defendants filed nothing within the requested forty-five days.

On March 29, 2018, "Clinton Richardson and the law firm of Capell & Howard, P.C." filed a motion to withdraw as counsel for the Defendants (doc. 46) to which the plaintiff objected (doc. 47).  On May 24, 2018, attorney Clinton Richardson filed another

---

[3] Upon the filing of the second motion for default judgment, the Court denied as moot the Plaintiff's first motion for default judgment (doc. 33).

4

motion, seeking to withdraw and to substitute attorneys James N. Northcutt, Jr. and Henry H. Hutchinson as counsel of record for the Defendants. (Doc. 48). On May 25, 2018, Attorneys James Northcutt Walter, Jr. and Henry Hamilton Hutchinson filed notices of appearance on behalf of all three defendants. (Docs. 49 & 50).

The case was reassigned to the undersigned on August 15, 2018. (Doc. 51). On October 16, 2018, the Court granted Attorney Richardson's motion to withdraw and to substitute attorneys and set the remaining motions for oral argument. (Doc. 52). The Court heard oral argument on the pending motions (Doc. 32 & 46) on November 16, 2018. At that time, counsel for the Defendants indicated their desire to withdraw from representation and informed the Court that the individual defendant as well as the corporate entities consented to their withdrawal as counsel of record in this case. The Court specifically expressed concern that that the corporate defendants could not be left unrepresented. Counsel represented that the defendants would secure new counsel by December 7, 2018.

Notably, after attorney Clinton Richardson filed his first Motion to Withdraw (doc. 46) on behalf of himself and his law firm, Richardson filed a subsequent Motion to Withdraw and sought leave to substitute new counsel (doc. 48). Thereafter, attorneys Walter and Hutchison filed Notices of Appearance on behalf of all Defendants. (Docs. 49 & 50). Despite indicating a desire to withdraw from representation of the Defendants, to date, neither Attorney Walter nor Attorney Hutchison has filed a Motion to Withdraw, nor has new counsel filed an appearance on behalf of the defendants. Further, Defendants have failed to respond to amended complaint.

5

## IV.  FACTS

The following facts are taken from the amended complaint (doc. 28).  According to the plaintiff, Lawrence Hickman, he worked for and invested in American Specialty Alloys, Inc. ("ASA").  Hickman asserts that he was an employee of ASA and worked with the company and its representative, Roger Boggs ("Boggs"), on a project to build an aluminum mill.  According to Hickman, Boggs offered financial incentives to him for his contributions, both monetary and labor.  In reliance on those representations, Hickman wired funds to Boggs, which were deposited into Boggs' personal account.

Hickman eventually became suspicious that the project to build the mill was not legitimate and was simply a way in which for Boggs to personally benefit financially.  Around the time Hickman began to doubt the legitimacy of the project, Boggs, on behalf of ASA, issued Hickman a 1099 instead of a W-2, effectively reclassifying him from employee to an independent contractor.  This reclassification resulted in tax benefits to ASA and Boggs and tax liability to Hickman.  Hickman ultimately discovered that the project was not funded and ASA and Boggs were unable to repay his financial investment.  Hickman realized that Boggs and ASA fraudulently used a law firm logo on its Promissory Note in order to bolster the credibility of the financial transaction.  Although Boggs represented to Hickman that the debt owed to him by ASA was bonded and insured, it was not.

When it became clear the project would not materialize, Boggs agreed to pay Hickman additional money to account for the delay in repayment of his investment.  On behalf of ASA, Boggs terminated Hickman's employment and agreed to pay him all money

owed plus severance, bonus, and relocation expenses, all totaling $335,705.04.  Despite these representations, Hickman has not received any payments from Boggs or ASA.

Hickman brings claims against ASA and Boggs for breach of contract, fraud, unjust enrichment, and conversion.[4]  None of the Defendants has responded to the Plaintiff's Complaint.

## IV.  DISCUSSION

In the Eleventh Circuit there is a "strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.,* 328 F.3d 1291, 1295 (11th Cir. 2003).  Nonetheless, it is well-settled that a "district court has the authority to enter default judgment for failure . . . to comply with its orders or rules of procedure." *Wahl v. McIver,* 773 F.2d 1169, 1174 (11th Cir. 1985).

Rule 55 of the Federal Rules of Civil Procedure provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend as provided by these rules." Fed. R. Civ. P. 55(a).  Although modern courts do not favor default judgments, they are appropriate when the adversary process has been halted because of an unresponsive party. *Flynn v. Angelucci Bros. & Sons, Inc.,* 448 F. Supp. 2d 193, 195

---

[4] Hickman also seeks to pierce ASA's corporate veil based on an alter ego theory to hold Boggs liable for the acts of the company. The Court notes, however, that "[a] claim based on the alter ego theory is not in itself a claim for substantive relief, but rather is procedural." *Ryals v. Lathan Co., Inc.*, 77 So. 3d 1175, 1179 (Ala. 2011). Thus, "[a] finding of fact of alter ego, standing alone, creates no cause of action." *Id*. Nevertheless, Hickman's allegations about piercing ASA's corporate veil relate directly to his breach of contract claims against the entity. And based on the complaint's allegations that Boggs "failed to maintain corporate formalities, adequately fund his entities, and . . . comingled his personal assets with those of ASA," the Court concludes that Hickman has pleaded sufficient facts to pierce ASA's corporate veil and hold Boggs liable as the corporation's alter ego. (Doc. 28 at 4).

7

(D.D.C. 2006) (citation omitted). Where, as here, defendants have failed to respond to or otherwise acknowledge the pendency of a lawsuit against them after being served, entry of default judgment may be appropriate.

The law is clear, however, that a defendant's failure to appear and the Clerk's subsequent entry of default against him do not automatically entitle the plaintiff to a default judgment. A default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.,* 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *see also Descent v. Kolitsidas,* 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("The defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"); *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("A default judgment cannot stand on a complaint that fails to state a claim.").

"The allegations must be well-pleaded in order to provide a sufficient basis for the judgment entered." *De Lotta v. Dezenzo's Italian Rest., Inc.,* 2009 WL 4349806 at *2 (M.D. Fla. 2009) (citing *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.,* 561 F.3d 1298, 1307 (11th Cir. 2009)). In deciding whether the allegations in the complaint are well pleaded, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)

(quotations omitted). Instead, the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*A. Breach of Contract*

While not a paradigm of clarity, the Court construes Hickman's complaint as alleging two separate breach of contract claims – one for breach of the May 7, 2014 Promissory Note (doc. 28-1); and the other for breach of the February 6, 2015 General Release Notice (doc. 28-2). The Court concludes that Hickman's allegations, coupled with the plain language of the Promissory Note and General Release Notice, provide a sufficient basis to enter judgment on both breach of contract claims. The Court addresses each claim in turn.

Beginning with the Promissory Note, the Court determines that Mississippi law applies to any breach thereunder.[5] To prevail on a breach of contract claim under Mississippi law, Hickman must establish "the existence of a valid and binding contract, and . . . a showing that the defendant has broken, or breached it." *Maness v. K & A Enterprises of Mississippi, LLC*, 250 So. 3d 402, 414 (Miss. 2018) (citation and quotations omitted). Here, Boggs, on behalf of ASA, issued Hickman a Promissory Note outlining the terms of repayment for Hickman's initial financial investment in the company. The Promissory Note provides that ASA "unconditionally promises" to pay Hickman "the principle sum of [$88,985.00], with interest accrued, at the rate of [100%], the sum of

---

[5] The Promissory Note contains a choice of law provision which reads "[t]his Promissory Note shall be governed and construed in accordance with the applicable laws of the [sic] Mississippi." (Doc. 28-1 at 4).

principle and interest totalling [sic] $177,970 to become due and payable on the [sic] December 15, 2014." (Doc. 28-1 at 3).  Further, Hickman's allegations establish that "Boggs executed [the Promissory Note], but refused to provide [him] with a signed copy." (Doc. 28 at 4).  To date, Hickman has not received any payment from Boggs or ASA pursuant to the terms of the Promissory Note.

Turning to the breach of the General Release Notice, the Court determines that Alabama law applies to any breach thereunder.[6]  To succeed on a breach of contract claim under Alabama law, Hickman must assert facts which establish "(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81 So. 3d 1258, 1267 (Ala. 2011) (citation omitted).  Here, Hickman alleges that concurrent with his termination from ASA "Boggs individually and through ASA, agreed to pay . . . all amounts due to [him], plus severance, tax obligations, wages, a bonus, moving expenses and other remuneration to compensate for financial losses suffered by Hickman as a result of the actions of Boggs, individually and on behalf of ASA." (Doc. 28 at 7).  To that end, "Boggs prepared a release that Hickman signed and an ASA employee witnessed, which also was executed and provided along with other documents that set forth the amounts owed to Hickman in the form of severance, bonus and other compensation." (*Id*.).  The

---

[6] While the General Release Notice, and the Plaintiff himself, are silent as to what law applies in the event of a dispute, Hickman does allege that he is a citizen of Alabama. (Doc. 28 at 1). This indicates to the Court, absent evidence to the contrary, that the contract at issue was formed in Alabama. Accordingly, Alabama law applies. *See Blalock v. Sutphin*, 275 So.3d 519, 523 (Ala. 2018) (noting that if the contract is silent as to what law applies, then courts should apply the law of the state where the contract was formed).

10

plain language of the General Release Notice indicates that the Defendants agreed to pay Hickman all money owed for his initial financial investment in ASA plus severance, bonus, and relocation expenses, all totaling $335,705.04. (Doc. 28-2 at 3). This amount includes the $177,970 that the Defendants promised to pay Hickman under the terms of the Promissory Note. Again, Hickman has not received any payment from Boggs or ASA.

The Court finds the language in the Promissory Note and General Release Notice unambiguous and therefore it must be enforced as written. Moreover, Hickman's allegations, which are deemed admitted, establish that he and the Defendants entered into legally binding agreements. Thus, the Court concludes, as a matter of law, that the Defendants' failure to comply with terms of the Promissory Note and General Release Notice resulted in breaches of the agreements. Moreover, after careful consideration of the pleadings, the briefs and the argument of counsel, the Court also concludes that a hearing is not necessary to award the Plaintiff damages in the amount of $335,705.04 plus pre- and post-judgment interest. *See S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) (noting that a district court need not hold a hearing to determine damages when "all essential evidence is already of record.").

In addition to compensatory damages in the amount of $335,705.04, Hickman seeks to recover attorney's fees in connection with both of his breach of contract claims. Accordingly, the Court analyzes each contract separately to determine whether Hickman is entitled to attorney's fees.

The Promissory Note in the instant case reads "[s]hould any amounts(s) that become due under this Promissory Note not be paid in full in accordance with its terms and

11

provisions, [ASA] hereby agrees to pay [Hickman] all reasonable associated costs, fees and expenses (including without limitation, attorney's fees) for the collection of same." (Doc. 28-1 at 3). While this language makes Hickman eligible for an award of attorney's fees, *see Harrison v. McMillan*, 828 So. 2d 756, 765-66 (Miss. 2002) (noting that under Mississippi law, attorney fees in breach of contract cases are generally not awarded unless the contract at issue provides for them), he fails to submit any evidence specifying the amount of legal fees he has incurred arising out of his efforts to enforce the Promissory Note. Thus, the Court concludes that a hearing is necessary to determine the amount of attorney's fees Hickman is entitled to recover under the Promissory Note.

As for Hickman's request for attorney's fees in connection with the breach of the General Release Notice, the Court finds that he is not entitled to such an award because the agreement does not provide for it. *See Regions Bank v. Lowery*, 101 So. 3d 210, 220 (Ala. 2012) (explaining that "[i]n Alabama, attorney fees are to be awarded only if they are provided for by statute, contract, or special equity.").

*B. Fraud*

Hickman's allegations concerning his fraud claim provide a sufficient basis for the Court to enter default judgment against Boggs as to liability. To state a claim for fraud, Hickman must establish: (1) a false representation; (2) concerning a material existing fact; (3) reliance upon the false representation; and (4) damages. *Cockrell v. Pruitt*, 214 So. 3d 324, 338 (Ala. 2016).

In the instant case, Hickman's allegations establish that Boggs personally recruited him to work on the aluminum mill project and "represented . . . that in exchange for [his]

work and financial contributions, Hickman would receive financial consideration and stock ownership of ASA." (Doc. 28 at 3). Relying on these representations, Hickman wired funds to Boggs, which were deposited into Boggs' personal account. Further, Boggs provided Hickman a Promissory Note for his initial investment in ASA which fraudulently used a law firm's logo to bolster the credibility of an otherwise sham financial transaction. What's more, Boggs represented to Hickman that the debt owed to him by ASA was bonded and insured, even though it was not. These allegations, taken together, establish liability on Hickman's fraud claim against Boggs.

While Hickman's allegations provide a sufficient basis for the Court to enter judgment as to liability on his fraud claim, they fail, without more, to establish that he is entitled to punitive damages on such claim. To be entitled to an award of punitive damages on a fraud claim, a plaintiff must prove "by clear and convincing evidence that the defendant consciously or deliberately engaged in . . . fraud . . .." Ala. Code § 6-11-20(a). Clear and convincing evidence is "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." Ala. Code § 6-11-20(b)(4). Moreover, "[p]roof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt." *Id*.

To support an award of punitive damages on his fraud claim, Hickman alleges that Boggs "intentionally employed a scheme during 2014 and 2015 whereby he made material misrepresentations . . . that Hickman would be repaid amounts provided to Boggs . . ." and

13

that he "fabricated details of business deals, law firm support and other facts that lulled Hickman into believing that Boggs was a legitimate businessperson who would honor his obligations." (Doc. 28 at 15). According to Hickman, Boggs made these misrepresentations "with full knowledge of their falsity, for the purpose of inducing Hickman's reliance . . . ." (*Id.*). These allegations alone do not establish by clear and convincing evidence that Boggs consciously or deliberately engaged in fraud such that he is entitled to punitive damages. Even if the allegations did warrant relief in the form punitive damages, Hickman fails to provide the Court with any evidence concerning the amount such an award should carry. Accordingly, the Court concludes that an evidentiary hearing is necessary to determine if Hickman is entitled to an award of punitive damages, and if so, in what amount. *See* Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

*C. Unjust Enrichment and Conversion*

Hickman is not entitled to default judgment on his unjust enrichment and conversions claims against the Defendants. Regarding the unjust enrichment claims, the Court has already found that express contracts between Hickman and Boggs exist. And under Alabama[7] law, "the existence of an express contract extinguishes an unjust

---

[7] The Court analyzes Hickman's unjust enrichment claim under Alabama law because it is the state where his alleged financial injury occurred. *See Rosa and Raymond Parks Inst. for Self Development v. Target Corp.*, 90 F.Supp.3d 1256, 1261 (M.D. Ala. 2015) (applying Michigan law to the plaintiff's unjust enrichment claim because, under Alabama's choice-of-law rules, the substantive law of state where the financial injury arose governed).

14

enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) (citations omitted).  Here, the Court's entry of judgment on Hickman's breach of contract claims provides him with an adequate remedy at law in the form of damages.  Thus, Hickman's unjust enrichment claims are precluded as a matter of law due to the existence of an express contract.

Similarly, the existence of express contracts also precludes Hickman's conversion claim against Boggs.  In reaching this conclusion, the Court notes that Hickman expressly stated in his complaint that his conversion claim "is pleaded in the alternative in the event that this Court rules that no contract exists." (Doc. 28 at 16).  Accordingly, the Court declines to enter judgment on Hickman's conversion claim.

## V. CONCLUSION

For the reasons discussed above, it is ORDERED that Hickman's Second Motion for Default Judgment (doc. 32) is GRANTED in part and DENIED in part as follows:

(1) Hickman's motion for default judgment on his breach of contract claims against the Defendants is GRANTED and he is awarded damages in the amount of $335,705.04 plus pre- and post-judgment interest;

(2) Hickman's motion for default judgment on his fraud claim against Boggs as to liability is GRANTED;

(3) Hickman's motion for default judgment on his unjust enrichment claims is DENIED;

and (4) Hickman's motion for default judgment on his conversion claim is DENIED.

Further, it is

ORDERED that an evidentiary hearing is set on September 30, 2020 at 10:00 AM in Courtroom 2F at the Frank M. Johnson, Jr. Courthouse Complex, One Church Street concerning the issues of punitive damages in connection with Hickman's fraud claim and attorney fees in connection with the breach of the Promissory Note.

Lastly, it is

ORDERED that the Plaintiff's motions for telephone status conference (docs. 57, 59, & 60) are DENIED as moot.

DONE this 31st day of August, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE